No. 48423.—Protests 10326–K, etc., of Balfour, Guthrie & Co., Ltd. (Portland, Oreg.).

KEEFE, Judge: This case arising at Portland, Oreg., involves the classification of merchandise invoiced as "Meat Meal Feeding Material." The merchandise was assessed for duty at 20 percent ad valorem under paragraph 1558, Tariff Act of 1930, as a nonenumerated manufactured article. The plaintiff claims that it is a tankage and as such properly free of duty under paragraph 1780.

At the trial it was stipulated and agreed between counsel that the merchandise was unfit for human consumption, and a deposition of Stephen N. Wentworth, production manager of the shipper, and samples of the imported merchandise were admitted in evidence.

The witness in the deposition stated that he was familiar with the merchandise in question because it was manufactured under his supervision. The following interrogatory, to wit, numbered 6, was asked the witness:

State whether this merchandise was made under your supervision, and, if not, whether any of the processes were conducted under your supervision.

The witness made answer thereto as follows:

We pick up the material as delivered by the municipal packing house, consisting of a mixture of bones and tankage in more or less the following condition: Moisture, 15–20 percent; grease 10–14 percent; remainder, bones. Upon receipt of the material it is put into process by us in a jacketed dryer, where the moisture is reduced. The grease is then extracted and the resulting dry product is screened whereby the meal or tankage is separated from the bones.

When asked to describe the process by which the merchandise here was made, including a description of the original material and the equipment or machinery used, the purpose of the processing and the character of the substances or materials recovered or produced, the witness answered as follows:

I did not actually observe the processing of this shipment, but have observed many such processings.

When asked to describe the processes which he had observed by which identical merchandise had been made in part by firms other than his own and in part under his supervision and asked to include a description of the original material and the equipment or machinery used, and to state the purposes of such processing referred to by him and the identity of the substances or material recovered or produced, he answered as follows:

In general practice, packing houses make a by-product so-called packer·bone, but this is not done at the Municipal Packing House in Buenos Aires. Green bones, with small meat trimmings attached, are crushed and tanked. This process is neither the "wet-rendering" nor the "dry-rendering" process, but a combination of the two, tending closer toward the "dry-rendering." While the material is cooked in a jacketed tank, some dry steam is introduced to hasten the process of freeing the grease. After the cooking is completed, the material is pressed with the "cloth and rack" system of pressing, leaving about 12–14 percent of the grease in the material when the packing house process is finished.

From a careful consideration of the foregoing evidence we are unable to determine that the imported merchandise is a tankage. As we view the situation before us here, the product delivered to the exporter by the Municipal Packing House in Buenos Aires, has been subjected to a rendering process to recover the fats and oils prior to delivery to the exporter and may have been a tankage. However, the evidence before us is insufficient to establish that the further processing of the material by the exporter produced nothing more than tankage.

Upon the state of the record before us we are constrained to enter judgment in favor of the defendant.